UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL GEORGEOFF,                    )
                                      )
              Petitioner,             )
                                      )
         v.                           )        No. 4:05 CV 1010 DDN
                                      )
JIM MOORE,                            )
                                      )
              Respondent.             )

## MEMORANDUM

     This action is before the court upon the petition of Missouri state
prisoner Michael Georgeoff for a writ of habeas corpus under 28 U.S.C.
§ 2254.  The parties have consented to the exercise of jurisdiction by
the undersigned United States Magistrate Judge pursuant to 28 U.S.C.
§ 636(c).  (Doc. 6.)

## I.  BACKGROUND

     On September 7, 2000, petitioner Georgeoff was convicted by a jury
in the Circuit Court of Franklin County, Missouri, of three counts of
felony statutory sodomy in the first degree (Counts I-III) and one count
of the class C felony of child molestation in the first degree of R.C.,
a minor child (Count IV).  (Doc. 9, Ex. 6 at 5-7.)  On November 16,
2000, petitioner was sentenced to 20 years imprisonment on Count I, 23
years on Count II, 26 years on Count III, and 7 years on Count IV.  (Id.
at 40.)  The sentences on Counts I-III were ordered to run concurrently
with each other, and the sentence on Count IV to run consecutively to
the others.  (Id.)

     On November 29, 2000, petitioner appealed the convictions.  (Doc.
3 at 2.)  On December 11, 2001, the Missouri Court of Appeals affirmed
the judgments.  State v. Georgeoff, 68 S.W.3d 505 (Mo. App. 2001) (per
curiam) (opinion not published); (Doc. 9, Ex. 16.)  On February 4, 2002,
a motion for rehearing and transfer was filed and denied.  (Doc. 3 at
2.)  On March 19, 2002, the Missouri Supreme Court denied petitioner's
request for transfer.  (Id.)

On April 8, 2002, petitioner filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. (<u>Id.</u> at 3.) On February 7, 2003, an evidentiary hearing was held. (Doc. 9, Ex. 17.) On September 5, 2003, the circuit court denied the Rule 29.15 motion. (Doc. 3 at 3.) On September 23, 2003, petitioner appealed the decision of the circuit court. (<u>Id.</u>) On June 8, 2004, the Missouri Court of Appeals affirmed the judgment. <u>Georgeoff v. State</u>, 140 S.W.3d 175 (Mo. App. 2004) (per curiam) (opinion not published); (Doc. 9, Ex. 24.) On August 24, 2004, the Missouri Supreme Court denied the request for transfer. (Doc. 3 at 3.)

## II.  PETITIONER'S GROUNDS FOR HABEAS CORPUS RELIEF

Petitioner claims eleven grounds for relief in this habeas action:

(1)  The trial court failed to dismiss the case against petitioner when the state failed to preserve and produce evidence of initial statements made to police by R.C. and others.

(2)  The audiotape of phone conversations between petitioner and R.C. was improperly received into evidence at trial.

(3)  During cross-examination, petitioner's counsel was not allowed to introduce evidence of prior false accusations made by R.C. and his reasons to fabricate the allegations.

(4)  The court improperly allowed indirect evidence of R.C.'s credibility to be introduced during expert testimony.

(5)  The court failed to discharge the venire panel after a venireperson made an inflammatory and prejudicial speech.

(6)  During opening statements, petitioner's counsel was not allowed to refer to the state's failure to preserve and produce the original handwritten statements made by R.C.

(7)  Petitioner received ineffective assistance of trial counsel because counsel refused to allow petitioner to testify.

(8)  Petitioner received ineffective assistance of trial counsel because counsel allowed evidence of other crimes to be introduced.

(9)  Petitioner received ineffective assistance of trial counsel when counsel failed to call an expert witness to aid in petitioner's defense.

(10) Petitioner received ineffective assistance of trial counsel when counsel failed to locate a witness.

(11) Petitioner received ineffective assistance of trial counsel for not introducing evidence of the statements made by R.C. and others to the police.

Respondent does not dispute petitioner has exhausted his state court remedies or that his petition was timely filed. Respondent argues, however, that Grounds 2 and 5 are procedurally barred and that all eleven grounds are without merit. The court considers the grounds seriatim.

### III.  EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for the claims they make in federal habeas corpus petitions filed in district court under 28 U.S.C. § 2254. See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Given the limitations periods for raising issues on direct appeal[1] and in motions for post-conviction relief,[2] it appears that no proper procedure for litigating his federal habeas claims remains available to petitioner.

However, exhaustion in the sense that petitioner has no remaining procedure for bringing a claim to the state court does not satisfy the statutory requirement. Rather, petitioner must have fairly presented each ground to the trial and appellate courts. Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam). If he has not done so and has no remaining procedure for doing so because he has defaulted on the legitimate requirements of the otherwise available procedures, his

---

[1]Notices of appeal from convictions in circuit court must be filed no later than ten days after the conviction and sentence become final. Mo. S. Ct. R. 30.01(d).

[2]Motions for post-conviction relief after trial must be filed not later than 90 after the mandate of the appellate court affirming the judgment or not later than 180 days after delivery to the Department of Corrections, if there is no direct appeal. Mo. S. Ct. R. 29.15(b).

ground for federal habeas relief is barred from being considered by the federal courts.  King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149-1150 (8th Cir. 1997) (petitioner's failure to present a claim on appeal from a circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court); Boyd v. Groose, 4 F.3d 669, 671 (8th Cir. 1993).

That does not end the analysis, however.  Petitioner may avoid the procedural bar, if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or if he can demonstrate that failure to review the claim would result in a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750 (1991). To establish sufficient cause for the procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with a state procedural requirement.  Id. at 750-752.

To demonstrate failure to review his grounds for relief would result in a fundamental miscarriage of justice, a petitioner may show that he was actually innocent.  Murray v. Carrier, 477 U.S. 478, 495-496 (1986).  A habeas petitioner asserting actual innocence to support his allegations of constitutional error must do so with new, reliable evidence.  Schlup v. Delo, 513 U.S. 298, 324 (1995).  Without new evidence of innocence, even a meritorious constitutional claim is not sufficient to allow a habeas court to reach the merits of a procedurally defaulted claim.  Id. at 316.

## IV.  STANDARD OF REVIEW

Habeas relief may not be granted by a federal court on a claim that has been decided on the merits in state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

- 4 -

28 U.S.C. § 2254 (d)(1)-(2).  "A state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case."  Tokar v. Bowersox, 198 F.3d 1039, 1045 (8th Cir. 1999).  The issue a federal habeas court faces when deciding whether a state court unreasonably applied federal law is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams v. Taylor, 529 U.S. 362, 409 (2000) (plurality opinion).  A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003).  Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief.  Id.

## V.  DISCUSSION

**GROUND 1**

In Ground 1, petitioner asserts that the trial court erred when it failed to dismiss the case against him as a result of the state's failure to preserve and produce the original handwritten statements made by victim R.C. and others.  According to petitioner, the police took written statements from R.C., two other minors, and three adults on or about October 8, 1998.  Trial counsel requested, through numerous discovery motions, that these statements be produced.  The record reflects that on May 11, 2000, the circuit court ordered that these statements be disclosed to the defense, if they existed. (Doc. 9, Ex. 9 at 379.)  However, by letter dated July 21, 2000, the prosecuting attorney's office advised defense counsel that those statements no longer existed.  (Id., Ex. 11 at 719.)  Petitioner argues he was denied a full evidentiary hearing on this matter.

On direct appeal, the Missouri Court of Appeals rejected this ground for relief.  The court reasoned that petitioner had failed to show bad faith on the part of the police.  Further, the appellate court held that trial counsel had ample opportunity to impeach the victim with cross-examination about the statement, thereby negating any potential unfairness which might have resulted from the state's failure to turn

over the victim's statement, if indeed it existed.  (<u>Id.</u>, Ex. 16 at 7-8.)

The Supreme Court previously held, "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988); <u>see also</u> <u>Illinois v. Fisher</u>, 540 U.S. 544, 548 (2004) (per curiam).  Petitioner does not allege bad faith on the part of the police for failing to preserve the original statements.  (Doc. 3 at 6.)  Accordingly, the loss of these disputed statements prior to trial counsel's discovery requests does not entitle him to habeas corpus relief.

In consequence, the decisions of the Missouri state courts were correct and Ground 1 is without merit.

**GROUND 2**

In Ground 2, petitioner alleges that the trial court erred when it admitted into evidence the audiotape recordings of telephone conversations between petitioner and minor victim R.C.[3]  (Doc. 3 at 8.)  Petitioner contends this evidence should have been suppressed because he did not receive any <u>Miranda</u> warnings, he did not have an opportunity to consult with counsel, and the police's use of a child who was told to lie to procure the statements was deceitful and outrageous conduct.  (<u>Id.</u>)

Respondent argues that Ground 2 is procedurally barred, because Ground 2 was not properly presented to the Missouri courts.  Whether this is the case is a close question.  When victim R.C. was being questioned at trial by the prosecution about whether the tape recording, State Exhibit 1, was "a complete and accurate recording of your entire conversation with [petitioner]," defense counsel objected that a proper foundation for the witness's knowledge about the exhibit had not been laid.  (Doc. 9, Ex. 3 at 225-26.)  The court overruled the objection.

---

[3]Transcripts of the phone conversations between R.C. and petitioner can be found at Doc. 9, Ex. 10 at 388-94.

The prosecution thereafter offered the exhibit into evidence, the judge had counsel go to the sidebar to discuss any objection, the defense counsel asked for an opportunity to question the investigating police detective about the exhibit, the prosecutor said the detective would be called in the state's case, defense counsel twice stated that he had no objection to the tape being played otherwise than about the evidentiary foundation, and the trial judge overruled the foundation objection. (Id. at 225-28.)   Later in the trial, after the recording had been played to the jury, when the detective testified, defense counsel stated he would not challenge the authenticity of the recording but questioned the officer about getting R.C. to lie to petitioner on the phone to get him to make incriminating statements. ( Id. at 411-13.)

In his post-trial motion for a new trial petitioner argued that the "trial court erred by allowing the audio tape to be admitted into evidence in that this tape was procured by law enforcement in an effort to usurp [petitioner's] right to remain silent and right to counsel in that law enforcement officials sought to obtain a statement from the [petitioner] without informing him that the statement would be utilized against him and thereby through the use of this trickery and deceit were able to avoid providing the [petitioner] with his Miranda warning. . . . [This violated petitioner's] rights pursuant to . . . the  First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution." ( Id., Ex. 11 at 664.)

On direct appeal, petitioner argued that the recording was received into evidence and played to the jury without a proper foundation of authenticity and accuracy of the recording being laid.  Petitioner also invoked the federal constitutional rights to due process and argued that "the subject matter of the conversation on the tape was involuntary and was the result of inducement." (Id., Ex. 14 at 42; id. at 37.)   In response, the state argued to the Court of Appeals that the proper foundation of authenticity and genuineness had been laid at trial and that "the circumstances under which the recording [was] obtained showed that the conversation was voluntarily made without any kind of inducement." (Id., Ex. 15 at 32.)

On direct appeal, the Missouri Court of Appeals took up petitioner's argument that a proper foundation was not laid at trial for the admission of the recording of the telephone conversation between R.C. and petitioner. The court rejected this ground because defense counsel stated "no objection" at trial. (<u>Id.</u>, Ex. 16 at 12.) For the same reason, the Court of Appeals refused to consider petitioner's argument before that court that the recording had been obtained by deceit and summarily overruled that point on appeal. ( <u>Id.</u>)

Even if this court concluded that Ground 2 is not procedurally barred, the ground still fails on its merits. <u>Miranda</u>[4] warnings are only required to be given to suspects who are in custody and being interrogated by authorities. <u>United States v. Axsom</u>, 289 F.3d 496, 500 (8th Cir. 2002). "[A]n 'in custody' determination requires two discrete inquiries: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." <u>Id.</u> at 499. As of the time of the call, there is no indication on the record that police had ever approached petitioner about his relations with R.C. Further, petitioner was in his residence when he conversed with R.C. and there is no indication that petitioner was not completely free to hang up the phone at any time. Because petitioner was not in custody at the time of the phone call, he was not entitled to <u>Miranda</u> warnings at that time.

Finally, petitioner contends the statements should have been suppressed, because they were obtained through trickery and deceit. It has been consistently recognized that the use of trickery and deceit by police are grounds for suppression only when it affects the voluntariness of the statements made by the subject. <u>Culombe v. Connecticut</u>, 367 U.S. 568, 576, 602 (1961); <u>Smith v. Bowersox</u>, 311 F.3d 915, 922 (8th Cir. 2002); <u>United States v. Kilgore</u>, 58 F.3d 350, 353 (8th Cir. 1995). R.C.'s lying about having canker sores in his mouth in order to elicit petitioner's statements about oral sex with R.C. in no way affected the voluntariness of petitioner's statements.

_____

[4]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

Accordingly, this ground is without merit.

**GROUND 3**

In Ground 3 petitioner claims the trial court refused to allow the cross-examination of alleged victim R.C. about prior false accusations of sexual abuse made by R.C. and his reasons to fabricate the allegations. This ground arises out of the trial court's grant of the state's motion in limine #1. In that motion in limine, based upon a Missouri statute[5], the state sought an order prohibiting the defense from eliciting or using information about prior allegations of sexual abuse involving R.C. and other relatives. (Doc. 9, Ex. 10 at 428-29.)

When the motion was taken up in a pretrial hearing, defense counsel objected to the motion and argued that such information was relevant to establish that someone other than the petitioner was the perpetrator of the charged crime. Petitioner's counsel also argued that such information may become relevant during trial. Counsel and the court discussed how the issues raised by the motion might arise at trial. Ultimately, in his ruling on the motion, the judge said,

> [A]t this point I am going to sustain the State's motion in limine. All motions in limine, of course, can be changed during trial as they come up. And basically I think that's all I hear you asking, is if you see the need for evidence along these lines, you want a chance to at least make an offer of proof to see if I will change my decision.

(*Id.*, Ex. 1 at 5-10.)

This ground was raised on direct appeal. (*Id.*, Ex. 14 at 73.) The Missouri Court of Appeals rejected this ground, because the trial court allowed the examination of R.C. about motives and allegations of sexual abuse. (*Id.*, Ex. 16 at 10.)

Ground 3 is without merit. First, trial counsel cross-examined R.C. about motivations to fabricate the allegations. (*Id.*, Ex. 3 at 195-199.) Second, trial counsel asked R.C. about the allegations he made against his half-sister Ninette. (*Id.* at 283.) Third, trial

---

[5]Mo. Rev. Stat. § 491.015.

counsel also examined R.C. about allegations he made against James, R.C.'s brother. (Id. at 285.)

Therefore, Ground 3 is factually without merit and the decision of the Missouri Court of Appeals was correct.


**GROUND 4**

In Ground 4, petitioner claims the trial court improperly admitted indirect evidence of R.C.'s credibility during the testimony of the state's expert. (Doc. 3 at 12.) Specifically, the state's expert, Dr. Monteleone, testified about Sexual Accommodation Syndrome, a condition in which children tend to delay telling others when they have been sexually abused. He stated that,

> what we've come to know is that children who have been sexually abused accommodate. They tend to keep the secret. If they tell, they tend to minimize it.
>
> They tend to delay telling it and often retract it, even though, they've been sexually abused. That's the Sexual Abuse Accommodation Syndrome and it's very commonly seen in children. The great majority of children never tell.

(Doc. 9, Ex. 4 at 560-61.)

This ground was raised by petitioner on direct appeal. (Id., Ex. 14 at 63.) The Missouri Court of Appeals rejected this ground, reasoning that Dr. Monteleone only described the syndrome in general terms and did not suggest that R.C. suffered from it. (Id., Ex. 16 at 8.)

The decision of the Missouri Court of Appeals was reasonable. Petitioner correctly points out that, "[i]t is the sole province of the jury to weigh the credibility of a witness." United States v. Martinez, 958 F.2d 217, 218 (8th Cir. 1992). However, the Eighth Circuit has explicitly allowed experts to testify about mental syndromes associated with abuse, when they do not specifically suggest a witness suffers from the syndrome, if it helps to explain inconsistencies in a witness's story. Arcoren v. United States, 929 F.2d 1235, 1241 (8th Cir. 1991). In particular, testimony concerning Sexual Accommodation Syndrome is admissible, provided "the testimony concerns general characteristics of

victims and is not used to opine that a specific child is telling the truth." <u>Brodit v. Cambra</u>, 350 F.3d 985, 991 (9th Cir. 2003).

Ground 4 is without merit.

## GROUND 5

In Ground 5, petitioner claims that the trial court erred in failing to discharge the entire venire panel when a venireperson made an inflammatory and prejudicial speech. (Doc. 3 at 13.) During voir dire, venireperson Kossmann expressed anger at defendants who refuse to testify in sexual abuse cases.

| | |
|---|---|
| MR. KOSSMANN: | In my opinion, I think you better take the stand. |
| MR. DILLOW: | So are you saying if he doesn't testify you can't be fair and impartial? |
| MR. KOSSMANN: | I say fry him. |
| MR. DILLOW: | Sorry. I didn't -- |
| MR. KOSSMANN: | I said fry him. |
| MR. DILLOW: | I still didn't understand. |
| MR. KOSSMANN: | Fry him. |
| MR. DILLOW: | Fry him? |
| MR. KOSSMANN: | Fry him. |
| MR. DILLOW: | Is there anybody else that has those same feelings, because I sure would like to know? |

(Doc. 9, Ex. 2 at 96.)

Trial counsel did not object to Kossman's comments at trial. (<u>See id.</u>) Petitioner raised this claim on direct appeal, seeking plain error review. (<u>Id.</u>, Ex. 14 at 26.) The Missouri Court of Appeals denied plain error relief because none of the selected jurors expressed a concern about the possibility of petitioner not testifying. (<u>Id.</u>, Ex. 16 at 3-4.)

Because no objection to the venireman's statement was made at trial, the ground is entitled only to plain error review. <u>United States v. Beckman</u>, 222 F.3d 512, 518 (8th Cir. 2000); <u>James v. Bowersox</u>, 187 F.3d 866, 869 (8th Cir. 1999). The court agrees with the Missouri Court of Appeals that there was no plain error.

Absent evidence to the contrary, a court assumes that a jury sworn by oath to follow the law, did so. <u>United States v. Beckman</u>, 222 F.3d 512, 519 (8th Cir. 2000). In addition, the decision whether to dismiss any or all jurors lies in the sound discretion of the trial judge.

United States v. Jones, 696 F.2d 479, 492 (7th Cir. 1982).   In Jones, the defendant argued that the district judge should have dismissed the entire jury panel based on the comments of two jurors.   Id.   On appeal, the Seventh Circuit rejected the argument, noting the trial judge had properly questioned the potential jurors and that none of the empaneled jurors displayed prejudice.   Id.   To dismiss an entire jury panel, a defendant must show that an inappropriate comment infected the rest of the panel.   Wolfe v. Block, 412 F. Supp. 2d 657, 685 (E.D. Mich. 2006), aff'd, 253 F. App'x 526 (6th Cir. 2007).   Otherwise, "every time a juror stated an opinion, favorable or unfavorable, about a party, and was later excused, it would be almost impossible to obtain a jury, particularly in smaller communities."   Id.

In this case, the trial judge swore the jury and instructed the jurors that they were to "perform [their] duties without prejudice of fear and solely from a fair and impartial consideration of the whole case."   (Doc. 9, Ex. 2 at 160.)   Petitioner has not shown the venireperons's comments infected or tainted the empaneled jury, or that the empaneled jurors otherwise acted with bias or prejudice.

This ground is without merit.


**GROUND 6**

In Ground 6, petitioner claims that the trial court erred in refusing to allow defense counsel to mention, during opening statements, the state's failure to produce or preserve R.C.'s original handwritten statements.   (Doc. 3 at 15.)   Petitioner argues that the inability to reference these statements violated his constitutional rights.   ( Id.)

During opening statements, the following exchange occurred:

| | |
|---|---|
| MR. DILLOW: | Unfortunately, the State failed to give us [R.C.'s] first statement that was written out in October. |
| MS. HOFFMAN: | Objection, your Honor. |
| JUDGE BERKEMEYER: | Sustained. |
| MS. HOFFMAN: | Improper statement. |
| JUDGE BERKEMEYER: | Sustained.   The jury will disregard that statement. |
| MR. DILLOW: | Judge, I have six witness -- |
| JUDGE BERKEMEYER: | Would you approach the Bench, please? |
| MR. DILLOW: | I apologize.   I have six witnesses that have testified under oath that |

```
                          they wrote out statements on October
                          the 8th.  I intend to offer that into
                          evidence.
        JUDGE BERKEMEYER:  I have no problem with that.  What I
                          have a problem with is the statement
                          that the State failed to give you that
                          information.
        MR. DILLOW:        It's the truth.
        JUDGE BERKEMEYER:  The State did respond to discovery and
                          provided you everything they had.
```
(Doc. 9, Ex. 3 at 189-90.)

This ground was raised by petitioner on direct appeal.  (<u>Id.</u>, Ex. 16 at 6.)  The Missouri Court of Appeals rejected this ground, stating that the reference was inappropriate for opening statements; defense counsel may not argue about the sufficiency of the state's evidence during opening statements.  (<u>Id.</u>)

A federal court, on habeas review, can reverse a state court evidentiary ruling only if the petitioner shows the alleged improprieties "were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." <u>Anderson v. Goeke</u>, 44 F.3d 675, 679 (8th Cir. 1995).  To meet this burden, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial.  <u>Id.</u>  In other words, petitioner must show that absent the alleged impropriety, the verdict probably would have been different.  <u>Id.</u>

In this case, petitioner has not satisfied his burden.  The trial court excluded defense counsel's remarks as being improper for opening statement.  In particular, the trial court objected to the phrasing that the state "failed" to turn over the statements.  However, the trial court noted that defense counsel could present the statements of his witnesses as evidence during the trial.  Because the trial court stated that defense counsel could present the substance of each witnesses' statements, petitioner is unable to show that the evidentiary ruling during opening statements was so egregious and flawed that it rendered his entire trial fundamentally unfair.  The decisions of the Missouri courts were reasonable.

Ground 6 is without merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Grounds 7 through 11 allege ineffective assistance of counsel. In order to prevail on a habeas claim of ineffective assistance of counsel, the petitioner must demonstrate a lack of reasonable performance of counsel and prejudice resulting from the unreasonable representation. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Under the performance component, petitioner must show that his lawyer's performance was unreasonable and not valid trial strategy. <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986); <u>Thai v. Mapes</u>, 412 F.3d 970, 978-79 (8th Cir. 2005). Under the prejudice component, a petitioner must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Morales v. Ault</u>, 476 F.3d 545, 550 (8th Cir. 2007), <u>cert. denied</u>, 128 S. Ct. 177 (2007).

**Ground 7**

In Ground 7, petitioner claims his trial counsel was ineffective because he refused to allow petitioner to testify. (Doc. 3 at 16.) Before the conclusion of petitioner's case, trial counsel had requested a short break to "make certain that he [petitioner] does not want to testify." (Doc. 9, Ex. 4 at 629.) Petitioner testified in the post-conviction hearing that during the break he told counsel, "I want to testify." (<u>Id.</u>, Ex. 17 at 32.) Petitioner's father testified that petitioner said, "I feel that I ought to testify." (<u>Id.</u> at 129.) Petitioner's mother testified that petitioner said, "[b]ut I want to testify. I want to take the stand." (<u>Id.</u> at 131.) Petitioner and his parents also testified that trial counsel said "that's not going to happen" or something to that effect. (<u>Id.</u> at 32, 129, 131.) After the recess, trial counsel told the court, "[w]e've had a discussion at length, not only with my client [petitioner], but with his two parents and they've been very much involved in preparation of this defense case, and all three of them agree with me that he does not want to testify." (<u>Id.</u>, Ex. 4 at 633.)

Following the post-conviction relief motion hearing the court rejected this ground, finding that petitioner's testimony was not

- 14 -

credible in light of the trial transcript, a decision which was affirmed by the Missouri Court of Appeals for the same reason.  (Id., Ex. 24 at 7.)

The circuit court made a factual determination that trial counsel's testimony was more reliable in light of the trial transcript. Petitioner contends this determination is incorrect.  A factual determination made by a state court can only be rebutted by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  Petitioner and his parents did not raise any objections to trial counsel's statement, made to the court, that the petitioner would not testify.  After the evidentiary hearing, the Missouri circuit court found petitioner's testimony not credible.  Under § 2254(e)(1), the findings and decisions of the Missouri courts are presumed correct.  Petitioner has failed to provide clear and convincing evidence that would rebut this presumption.

Ground 7 is without merit.

## Ground 8

In Ground 8, petitioner alleges his counsel was ineffective for opening the door and allowing the improper admission of evidence of other crimes.  (Doc. 3 at 19.)  In particular, he argues that trial counsel was ineffective for introducing evidence of alleged crimes that occurred in Taney County, involving another minor child.  ( Id.)

During the post-conviction evidentiary hearing, trial counsel testified that he introduced evidence of the alleged events in Taney County, because there were numerous inconsistencies between R.C.'s account of the Taney County events, and K.T.,'s account of the events. (Doc. 9, Ex. 17 at 70.)  Trial counsel believed the inconsistencies from the Taney County episode would detract from R.C.'s credibility, and the credibility of the Franklin County charges.  Standing alone, trial counsel believed there were very few inconsistences in R.C.'s story concerning the Franklin County charges.  ( Id.)

> From the depositions that we took, [R.C.'s] allegations as to the Franklin County charges, there were very few, if any, inconsistencies in his story.  The majority of the depositions that I took were taken in the Taney County case, and in taking [R.C.'s and K.T.'s] depositions . . . literally 20, 30, 40, 50 discrepancies popped up between [K.T.'s] story

and [R.C.'s] story as to what happened on the way to Branson
and what happened in Taney County. From a strategic
standpoint, I was attempting to show the jury that these boys
were not credible, because they couldn't keep their story
together, and I - I did inject the acts from outside
[Franklin County] and I did it intentionally because I saw
that as a way of attacking their credibility, or [R.C.'s]
credibility primarily.

(Id.)

Petitioner raised this ground in his Rule 29.15 motion for post-
conviction relief. (Id., Ex. 22 at 24). The Missouri Court of Appeals
affirmed the denial of relief on this ground, holding that trial counsel
made a reasonable strategic choice given the inconsistencies surrounding
the Taney County allegations. ( Id., Ex. 24 at 9.)

"[S]trategic choices made after thorough investigation of law and
facts relevant to plausible options are virtually unchallengeable; and
strategic choices made after less than complete investigation are
reasonable precisely to the extent that reasonable professional
judgments support the limitations on investigation." Strickland, 466
U.S. at 690-91. In this case, trial counsel's decision to introduce the
Taney County allegations was not unreasonable. Trial counsel thoroughly
cross-examined R.C. about the Taney County allegations, and in doing so,
he was able to expose numerous inconsistencies between R.C.'s testimony
and his written statements. (Doc. 9, Ex. 3 at 297-325.) In light of
these inconsistencies, trial counsel's strategic choice was not
objectively unreasonable.

The decisions of the Missouri courts were reasonable and Ground 8
is without merit.

**Ground 9**

In Ground 9, petitioner alleges that counsel rendered
constitutionally ineffective assistance for failing to call expert
witnesses at trial who would have rebutted the testimony of the state's
expert. (Doc. 3 at 20.) Petitioner alleges that Dr. Philip Esplin, an
expert not retained by trial counsel, could have been called to attack

the prosecution's case.[6]  (Id. at 21).  Petitioner also argues that the testimony of Dr. Dell-Duncan, an expert witness retained by trial counsel, would have rebutted the testimony of Dr. Monteleone, the state's doctor.  (Id.)  Specifically, he argues Dr. Dell-Duncan would have testified there was no such thing as child sexual abuse accommodation syndrome.  (Id.)  Ultimately, trial counsel decided not to present expert testimony during the trial because Dr. Dell-Duncan told him, "on cross-examination they [the prosecution] would tear [my] testimony to shreds."  (Doc. 9, Ex. 17 at 61-62.)

Petitioner raised this ground in his Rule 29.15 motion.  (Id., Ex. 22 at 17.)  The Missouri Court of Appeals affirmed the circuit court's denial of relief, concluding that trial counsel was not required to present testimony if it did not unqualifiedly support the petitioner's position, and trial counsel was not required to expert shop.  (Id., Ex. 24 at 8-9.)

Trial counsel maintained contact with Dr. Dell-Duncan during the course of the trial, working with her on strategy and apprising her of the trial's development.  (Id., Ex. 17 at 63-65.)  In particular, trial counsel notified Dr. Dell-Duncan of Dr. Monteleone's testimony, but noted that he felt confident about his cross-examination.  (Id. at 65.)  Dr. Dell-Duncan would have been available to rebut testimony about the nature of child sexual abuse accommodation syndrome.  (See id. at 63-65.)

Dr. Esplin would have also been available to discuss some of the misconceptions about sexual accommodation syndrome.  (Id., Ex. 18 at 11-13, 41.)  Dr. Esplin would have also been available to testify about the best procedures for interviewing children suspected of being sexually abused.  (Id. at 20-24.)

During the trial, Dr. Monteleone's testimony regarding sexual accommodation syndrome was limited to two general statements at the end of his testimony on direct examination.  (Id., Ex. 4 at 553-61.)  His testimony principally concerned the physical examination he conducted of the victim, R.C., and his medical findings from the examination.

---

[6]A transcript of the deposition of Dr. Esplin can be found at Doc. 9, Ex. 18.

(Id.)  In particular, Dr. Monteleone testified that the physical examination of R.C.'s anus revealed chronic large healing tears that were oozing and chronically open.  (Id. at 558.)  He noted the tears were consistent with anal penetration. ( Id.)

On cross-examination, defense counsel questioned Dr. Monteleone about the healing tears.  (Id. at 562-67.)  Through cross-examination, Dr. Monteleone stated that the tears could have been caused by constipation.  Dr. Monteleone also noted that he had not written in his report that the tears were open and oozing.  Dr. Monteleone stated that he could not date the tears, and that the tears could be as old as four or five years.  Finally, Dr. Monteleone noted that the tears could have been the result of objects inserted in R.C.'s anus by either his brother or half-sister. ( Id.)

Trial counsel does not have to hire or retain an expert witness in every case for his assistance to be considered effective.  See Knott v. Mabry, 671 F.2d 1208, 1213 (8th Cir. 1982).  Instead, effective preparation and cross-examination of a state's witness can fall "well within the permissible boundaries of constitutionally adequate representation."  Id.  In Knott, William Knott argued his trial counsel was ineffective for failing to secure expert assistance in challenging the testimony of the state's toxicologist.  Id. at 1209.  Knott was accused of setting fire to his home, killing his ex-wife.  Id.

The Eighth Circuit rejected Knott's arguments, noting that his trial lawyer had effectively challenged the toxicologist's equivocal findings during cross-examination.  Id. at 1213.  In particular, the court noted how trial counsel forced the toxicologist to concede that: (1) the metal traces on Knott's pants could have been up to ten months old; (2) the product found on Knott's hands was not necessarily gasoline or diesel fuel; (3) he had not found any real landmarks on Knott's hands; and (4) he could have photographed the metal traces on Knott's hands, but failed to do so.  Id.; see also Ashker v. Class, 152 F.3d 863, 875-76 (8th Cir. 1998) (Trial counsel was not ineffective for failing to obtain an expert witness for trial.  Trial counsel extensively cross-examined the state's witness about the discovery and

testing of the evidence, and about the reliability of his conclusions with respect to the evidence).

In this case, Georgeoff's trial lawyer effectively challenged the testimony of the state's witness. His lawyer highlighted Dr. Monteleone's equivocal findings, noting how Dr. Monteleone could not date the tears, could not be certain of what caused the tears, and failed to document some of his findings. In addition, Georgeoff's trial lawyer had already retained one expert witness, Dr. Dell-Duncan, with whom he maintained regular contact during the trial. As noted above, Dr. Dell-Duncan believed her testimony would have been torn to shreds, had she been called to testify. See Strickland, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts . . . are virtually unchallengeable."). Looking to Knott, trial counsel effectively challenged the state's witness, and did not render constitutionally ineffective assistance by failing to call either Dr. Dell-Duncan or Dr. Esplin at trial.

The decisions of the Missouri courts were reasonable and Ground 9 is without merit.


**Ground 10**

In ground 10, petitioner claims that counsel rendered ineffective assistance for failing to locate Ninette Fair. (Doc. 3 at 21.) According to petitioner, "[h]er testimony would have established R.C.'s habit of falsely accusing people of abusing him and supported the defense that R.C. invented the accusations against [petitioner]." (Id.)

Ninette was R.C.'s half-sister and was born Ninette C. in California. (Doc. 9, Ex. 19 at 4.) She had lived with R.C.'s family for a period of time when she was younger but was placed in a mental institution after R.C.'s mother accused her of touching R.C. and his brother inappropriately. (Id. at 7, 13-14.) Upon release, she moved back to her mother's home in Oregon. (Id. at 22, 23.) Ninette had no contact with R.C.'s mother, father, or R.C. after moving out. (Id. at 23, 26.) On November 25, 1997, she obtained an Oregon identification card under the name Ninette Louise Hinton. (Id. at 4.) She later married and changed her name again to Ninette Fair. (Id.) Ninette was

in New Mexico when she was eventually located by Rhonda Cidlik, a private investigator, whom petitioner hired after trial. (Id. at 1, 4-5.)  Ninette was deposed after Cidlik found her.  (Id. at 1.)

This ground was raised in petitioner's Rule 29.15 motion for post-conviction relief.  (Id., Ex. 22 at 32.)  The Missouri Court of Appeals rejected this ground, reasoning that trial counsel had conducted a reasonable investigation to find Ms. Fair, and her testimony did not provide any evidence of false allegations made by R.C.  (Id., Ex. 24 at 11.)

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Otey v. Grammar, 859 F.2d 575, 577 (8th Cir. 1988).  Trial counsel does not have a duty, however, to locate difficult to find witnesses.  See Blair-Bey v. Nix, 44 F.3d 711, 713 (8th Cir. 1995).  "We decline to impose a duty on criminal defense attorneys to hire private investigators to locate recalcitrant witnesses."  Id.  In addition, where trial counsel has attempted numerous efforts to locate a witness, counsel's representation "cannot be said to have fallen below an objective standard of reasonableness."  Anderson v. Groose, 106 F.3d 242, 245 (8th Cir. 1997)

In this case, trial counsel attempted to get as much information as he could concerning Fair's whereabouts from R.C.'s parents.  (Doc. 9, Ex. 24 at 9-10.)  He could only determine that Fair was living somewhere in the southwestern part of the United States the last time anyone had contact with her.  (Id.)  Trial counsel hired a private investigator, and together they tried to find her using computer searches.  (Id.)  Although that particular private investigator's attempts were unsuccessful, another investigator was able to locate the witness after trial.  (Id., Ex. 19 at 4; Ex. 17 at 140-43.)

Ninette had changed her name several times - from Ninette C. to Ninette Hinton, to Ninette Fair.  She had moved several times, living in California, Oregon, and New Mexico, and had no contact with R.C. or his family, since the time she moved away.  Trial counsel gathered as much information about Ninette as possible from R.C.'s parents, and hired an investigator to locate her.  Even though his efforts were

unsuccessful, the inability to locate Ninette does not amount to ineffective representation. See <u>Anderson</u>, 106 F.3d at 245; <u>Blair-Bey</u>, 44 F.3d at 713.

The decisions of the state courts were reasonable and Ground 10 is without merit.

## Ground 11

In Ground 11, petitioner alleges trial counsel was ineffective for not introducing evidence of the statements made by R.C., and others, to the police on October 8, 1998. (Doc. 3 at 22.) Petitioner raised this ground in his Rule 29.15 motion for post-conviction relief. (Doc. 9, Ex.22 at 39.) The Missouri Court of Appeals rejected this ground, finding that trial counsel had made several attempts to introduce these statements into evidence - in a motion in limine and during opening statements. (<u>Id.</u>, Ex. 24 at 4.)

On May 11, 2000, the circuit court ordered the state to provide to trial counsel the written statements of J.C., R.C., and K.T., from October 8, 1998, provided they existed. (<u>Id.</u>, Ex. 9 at 379-80.) On July 21, 2000, Linda Hoffman, the assistant prosecuting attorney, wrote to trial counsel about the written statements. (<u>Id.</u>, Ex. 11 at 719.) "My office has contacted DFS [Department of Family Services], the Franklin County Sheriff's Department and the Pacific Police Department and they do not have any written statements from any of the children dated October 8, 1998. It is our position that these statements do not exist." (<u>Id.</u>) During opening argument, trial counsel referred to these missing statements, but was instructed that the statement was improper. (<u>Id.</u>, Ex. 3 at 189-90.) This appears to be the last time trial counsel mentioned the statements from October 8, 1998.

Trial counsel requested the written statements at issue, but was told that the statements did not exist. Trial counsel briefly mentioned the missing statements during opening argument, but did not mention them again. There is no indication the written statements were exculpatory, or otherwise helpful to the defense. Trial counsel cross-examined R.C. and K.T. extensively during the trial, drawing out a number of inconsistencies in their testimony. (<u>See</u> <u>id.</u>, Ex. 3 at 280-367, 449-

503.)  Trial counsel also cross-examined J.C. and the detective.  ( <u>Id.</u>
at 412, 416-18, 425-26, 427-29.)

Nothing in the record suggests that trial counsel's decision not
to introduce the evidence of the missing statements prejudiced
petitioner's case.  Nothing in the record suggests the outcome of the
trial would have been different had this evidence been introduced.
Trial counsel cross-examined the witnesses on a number of issues
directly relating to the charges against petitioner.  The decision not
to introduce testimony relating to the missing statements, with no proof
the missing statements were in any way favorable to the defense, does
not constitute ineffective assistance of counsel.

Ground 11 is without merit.


## VI.  CONCLUSION

For the reasons stated above, the petition of Michael Georgeoff for
a writ of habeas corpus is denied.  An appropriate order is issued
herewith.




    /S/  David D. Noce
**UNITED STATES MAGISTRATE JUDGE**


Signed on April 14, 2008.